IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| William Bailey, Jr., Donald Benyon, Jr., Anna Marie Bochter, John Brosnahan, Arnold Furth, Gerald Goldberg, Gerald Gregg, David Kasuba, Robert Krause, Robert Pitulski, Robert Pollice and Urban Schneider,<br>    Plaintiffs,<br><br>vs.<br><br>Viacom, Inc., successor to CBC Corporation, formerly known as Westinghouse Electric Corporation,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 4-607 |

AMBROSE, Chief District Judge

**OPINION**
**and**
**ORDER OF COURT**

Defendant Viacom, Inc. ("Viacom") moves for summary judgment with respect to the age discrimination claims asserted by Plaintiffs Donald Benyon ("Benyon"), Anna Marie Bochter ("Bochter"), Gerald Gregg ("Gregg"), David Kasuba ("Kasuba") and Robert Krause ("Krause"). See Docket No. [39]).[1] It has already been established that none of these Plaintiffs submitted a timely charge to the EEOC within 300 days of his or her termination. Thus, absent application of the equitable tolling doctrine, the claims are untimely and Viacom is entitled to summary judgment.

---

[1] Given the number of Opinions issued in this and related cases, the parties are presumed familiar with the facts and relevant history. Accordingly, I will limit myself to the salient details.

1

In Ruehl v. Viacom, 500 F.3d 375, 384 (3d Cir. 2007), the Third Circuit Court reaffirmed the two requirements for equitable tolling in an employment discrimination case:

> the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, *and* (2) this deception *caused* the plaintiff's non-compliance with the limitations provision.

quoting, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). In Ruehl, the Third Circuit court determined that Ruehl could not demonstrate that Viacom's alleged deception caused his late filing. Ruehl, 500 F.3d at 385. Specifically, the Court determined that:

> Ruehl admitted at his deposition that he first thought he had been subjected to age discrimination in the summer of 1998:"I guess when I was probably the oldest person in the department that was let go, and I was the only one not offered a job with the outsourcer ... [around] Summer of '98 I guess, you know, around the time of my termination ... (App. At 295.) Ruehl also admitted that in 1994 he thought there may have been age discrimination at Viacom, when, in his presence, Viacom's Chief Financial Officer referred to an older employee as a "blocker," and said that Viacom need to "get him out of here." (App. at 292.) Ruehl perceived this at the time to be the type of "comments [that] were probably made about me the same way when I wasn't in the room." (Id.)

Ruehl, 500 F.3d at 385. The Third Circuit court reasoned that because these facts, which would have supported Ruehls' cause of action, were known to him at the time of his termination, he could not demonstrate that Viacom's failure to disclose data under the Older Workers' Benefit Protection Act ("OWBPA") caused his failure to pursue a claim. Id.

2

Viacom believes that Benyon's, Bochter's, Gregg's, Kasuba's, and Krause's factual scenarios are analogous to Ruehl's. That is, Viacom contends that those Plaintiffs knew facts which would have supported their individual causes of action at or around the time of their termination. Consequently, Viacom reasons, they cannot demonstrate how Viacom's failure to disclose data under the OWBPA caused their failure to timely pursue their claims.

After careful consideration, and for the reasons set forth below, I agree. Viacom is entitled to the entry of summary judgment.

## Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id</u>. at 324.

<u>Analysis</u>

1. <u>Benyon</u>

Benyon was terminated from his employment on December 31, 1997. Benyon admitted that, at the time of his termination, he thought he was being let go because of his age:

> Q: When you were laid off, did you feel like the company was laying you off because of your age?
> A: The thought came to my mind. It did. I thought I had contributed quite extensively to the company and my record of achievements were very good. The thought did enter my mind.

<u>See</u> Benyon Dep., p. 23. Benyon also admitted that, prior to his termination, he believed that Viacom had a "culture" of age discrimination. In response to a question of what made him believe, at the time he was being terminated, that he was being discriminated against on the basis of age, Benyon replied:

4

> There were cases that, in other parts of Westinghouse, that had been brought due to age discrimination, and which Westinghouse was shown to be similar, and based upon the culture there, my - my view was that if it happened elsewhere, since there was some pretty strong centralized control, that could be happening in the division in which I operated or worked. So the combination of my successes that I achieved and what I had seen in other parts of the corporation, through reading in the newspaper, led me to conclude that age discrimination could, in fact, be the reason for my termination.

See Benyon Dep. II., p. 160-162. Further, Benyon conceded that he was familiar with Viacom management's use of the word "blocker" prior to his termination. See Benyon Dep. II, p. 162-64. Benyon understood that term to "designate the people that were higher age were blocking the youth of the corporation from moving forward." See Benyon Dep. II, p. 162-63. Benyon acknowledged that "the thought occurred to me that I could have fallen in that category per Mr. Jordan and the management at Westinghouse." See Benyon Dep. II, p. 162-63 (emphasis added).[2]

I agree with Viacom that Benyon's admissions are comparable to Ruehl's. The fact that he contends his convictions "strengthened over time as he was able to reflect" (see Benyon Dep. II, p. 164) is unconvincing. Such statements do not

---

[2]In his Affidavit, Benyon states:
I also heard references to the Chairman's Initiative program and the term "blocker." At the time of my termination, I did not regard myself as a blocker, nor did I connect the Chairman's Initiative program to my own termination.
See Docket No. 54-2, paragraph 9. This Affidavit was issued after the testimony given in the deposition and while Benyon states that he did not regard himself as a "blocker," this does not in fact contradict the statements given in the deposition that the thought occurred to Benyon, prior to his termination, that "per Mr. Jordan and management at Westinghouse" that he "could have fallen in that category." See Benyon Dep. II, p. 163.

5

contradict his admissions that at the time he was terminated he believed Viacom had a culture of age discrimination, that he believed he was being terminated on the basis of age, and that he was considered by Viacom management as one of the "blockers." Nor do I find Benyon's contentions that he failed to connect what he believed to be age discrimination on the part of his manager regarding the directive to give his secretary a "poor review" (see Benyon Dep. II, p. 94-95) or the Leaders of the Future Program, to his own termination, to be convincing. Again, the record contains uncontradicted evidence indicating that at the time of his termination, Benyon believed himself to be the victim of age discrimination. Thus, like Ruehl, he cannot demonstrate that Viacom's failure to disclose OWBPA data caused his failure to pursue a claim based upon information he already had. Because Benyon is not entitled to invoke the equitable tolling doctrine, his administrative claim was not timely filed and Viacom is entitled to summary judgment.

 2. <u>Bochter</u>

Anna Marie Bochter began working at Viacom on December 4, 1961. See Bochter Dep., p. 23. Her employment was terminated on November 30, 1996. See Docket No. 51, p. 14. Bochter testified that, at the time of her termination and based upon 35 years of observation, she believed Viacom had a culture of age discrimination:

> Q: At the time you left Westinghouse, did you believe that Westinghouse had a culture of discrimination?
> A: Yes.
> Q: What evidence do you have of that?
> A: I have a belief.
> Q: What's your belief based on?

>     A: My observations for 35 years.
>     Q: What did you observe that led to that belief?
>     A: Mostly older employees were impacted by reductions.

See Bochter Dep., p. 245-246.

She also testified that she felt discriminated against by Viacom:

> Q: Did you ever feel discriminated against by your employer while you were in the [sic] Westinghouse?
> A: Yes.
> Q: When was that?
> A: Well, when I was laid off.
> Q: Any other times than we discussed today?
> A: There were probably other times when there were subtle references, but I can't recall anything specific.
> Q: What were the references to?
> A: Age.
> Q: Towards you?
> A: Uh-huh.

See Bochter Dep., p. 249-50.

Thus, Bochter admits that she believed, based upon 35 years of observation, that Viacom had a culture of age discrimination. She witnessed reductions disproportionately affecting older employees. She also had herself been subject to discriminatory age comments during her employment. Most importantly, she believed that her termination was due to age discrimination. Bochter offers nothing to contradict this evidence other than that she was actively misled by Viacom because it failed to give her the OWBPA data and that she was not given additional information when she was terminated. See Docket No. 53, p. 6. However, as the Third Circuit court made clear in Ruehl, 500 F.3d at 385, this is insufficient to withstand the entry of summary judgment. Accordingly, Viacom's Motion is

7

granted.

3. Gregg

Gerald Gregg was notified on January 15, 1999 that he would be terminated from his employment with Viacom on January 31, 1999. See Gregg Dep., p. 151. Gregg admits that, prior to the time of his actual termination, he believed that he was being terminated on the basis of age:

> Q: So, did you then think at that time that your age was why you were being selected:
> A: Well, if it wasn't at that time, it was shortly thereafter.
> Q: When you mean shortly thereafter, you mean days, weeks?
> A: It couldn't have been weeks. I had only 2 weeks to get out of there. I don't know. It was at some point.
> Q: Before you physically left the company?
> A: Pardon?
> Q: At some point before you physically left the company?
> A: Yes.

See Gregg Dep., p. 154. Gregg explained that his belief was based both upon his observation that in the prior 4-5 years, Viacom had been "hustling" older people to early retirement and because he was let go despite being the most qualified and most accomplished:

> Q: Did you believe you were being discriminated against because of your age because you couldn't think of any other reason why you would be terminated?
> A: Well, that and the fact that over the last 4-5 years, the older workers were being hustled on to early retirement and being involuntarily separated.
> Q: Prior to your separation or being notified that you were going to be laid off, over these 4 or 5 years prior to that, did you, indeed, notice what you just described to me?
> A: Know what?
> Q: Notice that older people were, as you said, being hustled to early retirement?

8

> A: Yes.
> Q: How was it that you noticed it?
> A: Because everybody around me was disappearing.

See Gregg Dep., p. 155. When questioned why he was surprised to be terminated in light of having observed this situation, Gregg responded:

> A: Well, the fact is that China was designated as a key growth area. I'm the one with the most experience in China. I'm the one with the most accomplishments in China. I'm the one with the high performance ratings on what I was doing in China... I wasn't even thinking about retirement.

See Gregg Dep., p. 157. Gregg admitted that he in fact complained to both Keith Paulson and possibly another individual named Cummins about age discrimination prior to the date of his termination:

> Q: Other than what you told me about your conversation with Mr. Campbell, did you complain to anyone about age discrimination?
> A: As I said, Keith Paulson.
> Q: I wasn't clear on that. Did you raise age discrimination with Keith Paulson?
> A: I might have even said it to Cummins; I think I've got a good case for age discrimination.
> Q: This is during that 2-week period after you received notice but before you went out, before January 31st?
> A: Yeah, yeah.
> Q: Anybody else besides Paulson and Cummins?
> A: Probably anybody I talked to. I don't remember. I certainly discussed it with my wife.

See Gregg Dep., p. 232-33. In fact, Gregg actually contemplated filing a charge with the EEOC:

> Q: Did you at any point in time consider filing a charge of discrimination with the Equal Employment Opportunity Commission?
> A: Oh yes. I thought about it at the time during that 2-week period, and

9

> I came to the conclusion that I really didn't have a lot of documentation that I was aware of, and I was a lone individual fighting a big corporation, and I didn't have the resources it do [sic] that and wait 2 or 3 or 4 years to start receiving my benefits. I had a mortgage and a stepson in college, but I thought about it.

See Gregg Dep., p. 233-34. Thus, Gregg's decision not to file with the EEOC was based upon fiscal considerations. Contrary to the suggestion made in his subsequent affidavit, it was not based upon a belief that he had not been discriminated against.[3] Consequently, because Gregg cannot demonstrate that Viacom's alleged deception caused his failure to timely file a claim with the EEOC, he is not entitled to invoke the equitable tolling doctrine. His age discrimination claim is therefore untimely and Viacom's Motion is granted.

### 4. Kasuba

David Kasuba began his employment with Viacom on June 15, 1970. See Kasuba

---

[3] In his Affidavit, written seven years after the deposition occurred, Gregg stated that "[b]efore my last day of work, I commented to the human resources department that I might have a claim of age discrimination for the sole purpose of getting a reaction from the company. The human resources department employee(s) with whom I spoke did not have any reaction to my comment and in fact, did not question me to learn the basis for my statement. To me, the human resources department seemed confident in the decision to permanently separate my employment, so I did not think about it." See Docket No. 54-4, paragraph 5. This statement contradicts his deposition testimony that he believed at the time of his termination that he was a victim of age discrimination. "A party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citations omitted); Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007); O'Bryant v. City of Reading, 197 Fed. Appx. 134, 138 (3d Cir. 2006). Gregg has not offered any plausible explanation for the contradiction. Accordingly, I disregard that portion of the Affidavit as a "sham affidavit."

10

Dep., p. 19. Kasuba's employment ended on November 30, 1996. Id., p. 29. Kasuba testified that he first realized he might have been discriminated against on the basis of age two days after being informed of the impending termination when a younger employee came to him to be trained to take over his duties:

> Q: You tell me two days later, another gentleman came to you and told you that he was going to take over your position and asked you to train him, correct?
> A: Right.
> Q: Is this the first time you realized that you may have been discriminated against?
> A: Yes.

See Kasuba Dep., p. 30;[4] see also p. 10-15. Kasuba conceded that he probably complained about the discrimination to "fellow employees." Id., p. 30. He declined to file a charge with the EEOC, however, because he was a "laid-back type of person":

> Q: Did you ever file any charges with the EEOC?
> A: No.
> Q: Regarding this? Why not?
> A: I would guess because I'm a laid-back type of person and don't always pursue things.
> Q: Even though you felt you were unfairly discriminated against?
> A: Yes.

Id., p. 30-31. Thus, like Ruehl, Kasuba conceded that he was aware of the alleged

---

[4] In his Affidavit filed seven years after the deposition was taken, Kasuba contends that he believed David Pirro was hired as his replacement, not because he was younger, but because he was a "brown noser." See Docket No. 54-4, paragraph 3. For the reasons set forth previously in this Opinion, I find Kasuba's affidavit to be a "sham affidavit." His "brown noser" statement directly contradicts his deposition testimony that he realized, when he was required to train Pirro that he may have been discriminated against and he offers no explanation for the contradiction.

discrimination at the time of his termination. His failure to pursue charges stemmed not from deception on Viacom's part but from his own disinclination. Thus, Viacom has demonstrated, as a matter of law, that Viacom's alleged deception caused Kasuba's failure to timely file with the EEOC. Because Kasuba is not entitled to invoke the equitable tolling doctrine, summary judgment is entered in favor of Viacom.

5. <u>Krause</u>

Robert Krause commenced his employment with Viacom in October of 1980. <u>See</u> Krause Dep., p. 35. His employment ended on December 31, 1996. <u>Id</u>., p. 32. He stated that he first believed he was a victim of age discrimination when he received notice of his impending termination:

> Q: When did you first believe that you had been discriminated against on the basis of your age?
> A: I believe it was when our group finally got together, and again, that's that list of names over there that you have. We're all in that age bracket, and we were all being terminated, and yet there's still work to be done.
> Q: This was around November or December of 1996?
> A: Right. That's when they gave us notice.
> Q: What did you do, if anything, after forming the belief that you had been discriminated against on the basis of you age?
> A: Well, till the time we actually did the signing for our lump sum, probably did some him-hawing around, the normal stuff that you do. But we didn't do anything formal, if that's what you're asking.
> Q: Can you tell me why not?
> A: No, I cannot.

<u>Id</u>., p. 85-86. Krause also testified that he knew that Viacom retained a younger worker at the time of his employment termination and that he believed that younger worker was more inexperienced than he, and should have been let go

before him. Id., p. 65-66.  Further, Krause explained that his failure to file a charge at the time of his termination was based upon a belief that he was not permitted to sue because he had signed a waiver. Id., p. 24-25.

Thus, as with Ruehl, Krause cannot demonstrate that Viacom's alleged deception <u>caused</u> his failure to timely file his charge with the EEOC. He testified that he believed he had been discriminated against on the basis of his age at the time of his termination.  He had seen people "50 and older ... [who were] good people as far as productivity there, no bad records, representing the company well ..." who were being let go. See Krause Dep., p. 26. At the same time, he observed that younger, more inexperienced people were being retained.  He also admitted that his failure to file a charge was based, not upon being unaware of the discrimination, but upon a mistaken belief that his signing of a waiver precluded him from doing so.[5]  Based upon these uncontroverted facts, Krause is not entitled to invoke the equitable tolling doctrine.  Because his claim for age discrimination is therefore untimely, Viacom is entitled to the entry of summary judgment in its favor.

## Conclusion

As stated above, Plaintiffs Benyon, Bochter, Gregg, Kasuba and Krause have each testified that he or she believed at or around the time of his or her termination that their termination was due to age discrimination, but they chose not to take any action.  Each Plaintiff observed, to some degree, a culture of

---

[5] The Third Circuit court has rejected this mistake as a basis for applying the doctrine of equitable tolling. See Ruehl, 500 F.3d at 384.

13

discrimination during their employment at Viacom.  These facts distinguish the circumstances from those in Meyer v. Riegel Prods. Co., 720 F.2d 303 (3d Cir. 1983). Under the Third Circuit court's decision in Ruehl, equitable tolling is not available to these Plaintiffs because it is undisputed that each believed at or around the time of their terminations that the actions were allegedly being taken on the basis of age.  Accordingly, Viacom is entitled to summary judgment on these claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| William Bailey, Jr., Donald Benyon, Jr., Anna Marie Bochter, John Brosnahan, Arnold Furth, Gerald Goldberg, Gerald Gregg, David Kasuba, Robert Krause, Robert Pitulski, Robert Pollice and Urban Schneider, Plaintiffs, vs. Viacom, Inc., successor to CBC Corporation, formerly known as Westinghouse Electric Corporation, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 4-607 |

AMBROSE, Chief District Judge

AND NOW, this 12th day of February, 2009, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Defendant's Motion for Summary Judgment (Docket No. [39]) is hereby GRANTED.

BY THE COURT:

/s/<u>Donetta W. Ambrose</u>
Donetta W. Ambrose,
Chief U.S. District Judge